United States Courts
Southern District of Texas
F I L E D

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT**     APR 0 2 2019
**OF TEXAS HOUSTON DIVISION** David J. Bradley, Clerk of Court

| | | |
|---|---|---|
| George O. Riley, Trena L. Riley | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | Case: **4:13-cv-00608** |
| Wells Fargo Bank, N.A., | ) | |
| | ) | |
| Defendant(s) | ) | |
| | ) | |

---

PLAINTIFF'S MOTION FOR RECONSIDERATION UNDER FRCP 59(e)
OF THE ORDER [Doc. 39] DENYING THEIR MOTION TO ALTER
AMEND OR MODIFY THE PRIOR JUDGMENT OF DIMISSAL [Doc. 28]

---

COMES NOW George O. Riley and Trena L. Riley, Plaintiffs, and files this their motion for reconsideration under FRCP 59(e) of the court's order [Doc. 39] dated March 25, 2019. The Riley's will demonstrate the following:

### I. Motion For Reconsideration

**1.** The Riley's respectfully requests reconsideration of the Court's order dated March 25, 2019 [Doc. 39] denying their motion to alter, amend, or modify the prior judgment of dismissal to permit them a full and fair opportunity to present the court all of the facts and evidence newly discovered in this case. Rule 59(e) motions "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co., 875 F. 2d. 468, 473 (5ᵗʰ Cir. 1989)*. The three factors typically considered by district courts in evaluating motions under rule 59(e) are: 1) an intervening change in controlling law, 2) the availability of new evidence not previously available, 3) the need to correct a clear error

## Table of Contents

I. Motion for Reconsideration.................................................................................. 1

  A. Newly Discovered Evidence............................................................................ 2

    1. Timeliness of Filing FRCP 60 Motion..................................................... 3

  B. Appellate Review............................................................................................ 4

  C. District Court Jurisdiction............................................................................... 4

  D  Discovery Material Deliberately Suppressed.................................................. 6

  E. Appealability when Previous Case Not Appealed: Attorney Abandonment............................... 11

Conclusion............................................................................................................ 12

Prayer................................................................................................................... 13

## Index of Authorities

94-20438, 94-20641, 1995 WL 413034, at \*3 (5th Cir. June 22, 1995)......................................5

Anderson v. Cryovac, Inc., 862 F.2d 910, 925 (1st Cir. 1988)...............................................8

Browder v. Director, Dep't of Corrections of Ill., 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978)............................................................................................................................11

Cooter & Gell v. Hartmarx, 496 U.S. 384, 405 (1990)........................................................8

DeWeerth 38 F.3d at 1270–71.............................................................................................5

DeWeerth v. Baldinger, 38 F.3d 1266, 1270–71 (2d Cir. 1994)............................................5

DeWeerth v. Baldinger, 658 F. Supp. 688, 690 (S.D.N.Y. 1987)..........................................5

DeWeerth v. Baldinger, 804 F. Supp. 539, 541 (S.D.N.Y. 1992)..........................................5

DeWeerth v. Baldinger, 836 F.2d 103, 109–10 (2d Cir. 1987)..............................................5

Diaz v. Methodist Hosp., 46 F.3d 492, 496 (5th Cir. 1995)..................................................6

Diaz, 46 F.3d at 496–97......................................................................................................11

Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993).................................2

First Republic Bank Fort Worth v. Norglass, Inc., 958 F.2d 117, 119 (5th Cir. 1992)...............4

Frazar v. Ladd, 457 F.3d 432, 435 (5th Cir. 2006).............................................................4

Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, 62 F.3d 767, 772 (5th Cir. 1995)...............6

Hernandez v. Results Staffing, Inc., 677 F. App'x 902 (5th Cir. 2017)...............................3, 6

Hesling v. CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. 2005).........................................6

Jernigan, 803 S.W.2d at 777................................................................................................9

Leavings v. Mills 175 S.W. 3d. 301 (Tex. Ct. App 2004).....................................................9

Lewis v. Alexander, 987 F.2d 392, 394 (6th Cir.1993)........................................................11

Lindy Invs. III v. Shakertown 1992 Inc., 360 F. App'x 510, 512 (5th Cir. 2010) (per curiam)..........5

Lindy Invs. III v. Shakertown 1992 Inc., 631 F. Supp. 2d 815, 819 n.6 (E.D. La. 2008).................5

Logan v. Burgers Ozark Country Cured Hams Inc., No. 02-30325, 2003 WL 1524574, at \*3 (5th Cir. Mar. 12, 2003) (per curiam)........................................................................................5

Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc., 690 F.3d 382, 385 (5th Cir. 2012)...............4

LSLJ P'ship v. Frito-Lay, Inc., 920 F.2d 476, 478 (7th Cir. 1990).......................................5

Maples v. Thomas, 132 S. Ct. 912, 924 (2012)...................................................................12

Myers v. Ace Hardware, Inc., 777 F.2d 1099, 1102 (6th Cir.1985).......................................11

Priesmeyer, 917 S.W.2d at 939............................................................................................9

Riley v. Wells Fargo Bank, N.A., et. al. 4:15-cv-1415..........................................................10

Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005)...........................................................2

Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978)...........................................6

Schiller v. Physicians Res, Group Inc., 342 F. 3d. 563, 566 (5th Vir. 2003)..........................2

Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)...............................................2

Solomon R. Guggenheim Found. v. Lubell, 569 N.E.2d 426, 430–31 (N.Y. 1991)...................5

Standard Oil Co. of California v. United States, 429 U.S. 17, 17 (1976) (per curiam)...............4

Standard Oil, 429 U.S. at 18................................................................................................5p.

Standard Oil, 429 U.S. at 18)...............................................................................................5

Standard Oil. See id. at 18–19.............................................................................................6

Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 2001).........................................................11

Templet, 367 F.3d at 479......................................................................................................2

Waltman v. Int'l Paper Co., 875 F. 2d. 468, 473 (5th Cir. 1989)............................................1

Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989).............................................2

(Perez 1) 745 F.3d 174........................................................................................................11

(Perez II)784 F.3d 276............................................................................................11

## Statutes

FRCP 59(e)..............................................................................................................1
FRCP 60(b)(4).........................................................................................................2
FRCP 60(b)(6).........................................................................................................2
FRCP 60(d)(3).........................................................................................................2
Rule 59(e)...............................................................................................................2
FRCP 60(c)..............................................................................................................3
FRCP 60(b)(2).........................................................................................................3
FRCP 60(b)(5),........................................................................................................3
FRCP 60(b)(6).........................................................................................................3
FRCP 60(d)(3).........................................................................................................3
FRCP 60..................................................................................................................4
FRCP 60(b).............................................................................................................6
FRCP 60(b)(3).........................................................................................................6
FRCP 60(b)(3).........................................................................................................8
FRCP 60(b)(3).........................................................................................................8
FRCP 60(b)(3).........................................................................................................9
U.C.C. 3-203 cmt 2.................................................................................................9
FRCP 60................................................................................................................11
Fed. R.App. P. 4(a)...............................................................................................11
FRCP 60(b)(6).......................................................................................................12
FRCP 60(b)(4).......................................................................................................12
FRCP 60(b)(6).......................................................................................................12
FRCP 60(d)(3).......................................................................................................12
Tex. Rule Civ. Procedure 194................................................................................13

of law or fact or to prevent a manifest injustice. *Schiller v. Physicians Res, Group Inc., 342 F. 3d. 563, 566 (5th Vir. 2003)*.

**2.** The Riley's contend they are entitled to redress under FRCP 60(b)(4), (b)(6), and (d) (3) because the Defendant Wells Fargo Bank, N.A., committed fraud, manufactured evidence, misrepresented facts, and defiled the judiciary itself by manipulating the court to rule in their favor using unethical methods. The new evidence received from the Department of Veteran Affairs demonstrates that Wells Fargo created, and presented a different set of facts in relation to the claims of ownership of the Riley's mortgage note than they presented to the court.

**3.** Rule 59(e) allows parties "to correct manifest errors of law or fact or to present newly discovered evidence." *Waltman v. Int'l Paper Co., 875 F.2d 468, 473 (5th Cir. 1989)*. "Reconsideration of a judgment after its entry is an extraordinary remedy that should be used sparingly." *Templet, 367 F.3d at 479*. A motion under Rule 59(e) must "clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Ross v. Marshall, 426 F.3d 745, 763 (5th Cir. 2005)* (citing *Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990)*). Motions under Rule 59(e) "cannot be used to raise arguments which could, and should, have been made before the judgment issued." Id. In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993)*.

**A. Newly Discovered Evidence**

**4.** The Riley's contend that the discovery of the mortgage note filed by Defendant Wells Fargo against Mr. Riley's veteran's home loan guarantee in 2017 with the now voided endorsement this court determined gave them standing to collect on the mortgage and ultimately foreclose, represents a new yet different set of facts originally alleged by the

Defendant to the court. The Riley's argue the mortgage note in question is new and material evidence and that it was not previously available to them. The note in question wasn't discoverable even with due diligence because it didn't exist at the time of this litigation, was in the hands of the defendant, and because the Riley's couldn't have known the Defendant altered the note in order to file a claim against Mr. Riley's veterans home loan guarantee. Additionally the statements made by John Heil, see exhibit 1, page 5-6, and Caryn Van Valkingburg, see exhibit 1, page 7-8, both of the Department of Veteran Affairs made in April 2017 shed light on the details surrounding Defendants claim filed with the Department of Veteran Affairs. See exhibit 1, page 3, attached hereto, and incorporated herein for all purposes.

### 1. Timeliness of Filing the Motion to Alter, Amend, or Modify Judgment

**5.** In the court's March 25, 2019 order the court determined that because the Plaintiff's filed the motion 5 years after the entry of judgment that it was untimely citing to FRCP 60(c). The Riley's contend this to be erroneous for two reasons, 1) the Riley's filed their motion not under FRCP 60(c), but under FRCP 60(b)(2), (b)(5), (b)(6), and 60(d)(3). There isn't a strict time bar on motions filed under FRCP(d)(3) and the Riley's contend their motion is sufficient for the court to set aside the previous judgment of dismissal based on the Defendants fraud and misrepresentations to the court just as in the *Hernandez* case *supra*.

**6.** This circuit in deciding the timeliness of a rule 60 motion to alter, amend, or modify a judgment, determined that the Defendant's motion filed 5 years after the entry of judgment was timely, In re: *Hernandez v. Results Staffing, Inc., 677 F. App'x 902 (5th Cir. 2017)*, the Fifth Circuit granted a rule 60(b) motion 5 years after the 2013 judgment was issued because Mr. Hernandez and his wife gave false testimony during trial that resulted in a victory on appeal for Mr. Hernandez. In the instant case the Defendants gave false testimony and provided a different set of facts surrounding their alleged ownership of the Riley's mortgage note to the Department

of Veteran Affairs in 2017. The Riley's argue the evidence is sufficient for the court to vacate the prior judgment of dismissal and reopen the case. The Riley's contend they were prevented from a fair and full opportunity to present their case based on the false statements and evidence provided by the Defendant.

**B. Appellate Review**

    **7.** The denial of a Rule 60(b) motion on the basis that the motion was not filed within a reasonable time is reviewed on appeal under the highly deferential abuse of discretion standard. *First Republic Bank Fort Worth v. Norglass, Inc., 958 F.2d 117, 119 (5th Cir. 1992)* (internal citation omitted). "What constitutes a reasonable time under Rule 60(b) depends on the particular facts of the case in question." Id

    **8.** This court reviews de novo an interpretation of a federal rule of civil procedure. See *Lowry Dev., L.L.C. v. Groves & Assocs. Ins., Inc., 690 F.3d 382, 385 (5th Cir. 2012).* Accordingly, this jurisdictional question is reviewed de novo. See id.; see also *Frazar v. Ladd, 457 F.3d 432, 435 (5th Cir. 2006)* ("We review de novo . . . any questions of law underlying the district court's decision.").

**C. District Court Jurisdiction**

    **9.** In the court's March 25, 2019 order denying relief under FRCP 60 the court stated that it lacked jurisdiction to entertain the motion. The Riley's respectfully point out that the Fifth Circuit has held the district court is the proper court with jurisdiction even if an appeal is currently taken.

    **10.** Federal Rule of Civil Procedure 60(b) provides grounds by which a "court may relieve a party or its legal representative from a final judgment, order, or proceeding," including in cases involving fraud, misconduct, or misrepresentation by an adverse party[1]. In *Standard*

---

[1] FED. R. CIV. P. 60(b)(3). The rules also contain a "catch-all" provision that allows for relief from a judgment, order, or proceeding for "any other reason that justifies relief." FED. R. CIV. P. 60(b)(6).

*Oil Co. of California v. United States, 429 U.S. 17, 17 (1976) (per curiam)*, the Court held that a

district court may entertain a Rule 60(b) motion without first obtaining leave of the appellate

court[2]. The Court found "the arguments in favor of requiring appellate leave . . . unpersuasive,"

noting that such a requirement "adds to the delay and expense of litigation and . . . burdens the

increasingly scarce time of the federal appellate courts." Id. at 18. This court has not—at least

since *Standard Oil*—required a party to obtain its leave before a district court may entertain a

Rule 60(b) motion. In *United States v. Warden*, for example, we declined to hear a Rule 60(b)

motion for relief, noting that "[a]pplication for relief under such rule is to be made . . . to the

district court which rendered the judgment[3]."

11. At least one other circuit has squarely addressed this question. In *DeWeerth v.*

*Baldinger, 38 F.3d 1266, 1270–71 (2d Cir. 1994)*, the court held that a district court retains

jurisdiction to review a Rule 60(b) motion for relief even after a reversal[4]. The court also found,

id., that its refusal to recall a mandate had no bearing on the district court's jurisdiction over a

---

2   Before Standard Oil, the Supreme Court and numerous courts of appeals had "required appellate leave before the
    District Court could reopen a case which had been reviewed on appeal." Standard Oil, 429 U.S. at 18.

3   Nos. *94-20438, 94-20641, 1995 WL 413034, at \*3 (5th Cir. June 22, 1995) (per curiam)*; see also *Lindy Invs. III v.*
    *Shakertown 1992 Inc., 360 F. App'x 510, 512 (5th Cir. 2010) (per curiam)* (remarking that "in light of changed
    circumstances" the lower court "did not 'flout[] the mandate by acting on the motion'" (quoting *Lindy Invs. III v.*
    *Shakertown 1992 Inc., 631 F. Supp. 2d 815, 819 n.6 (E.D. La. 2008)*)); *Logan v. Burgers Ozark Country Cured Hams*
    *Inc., No. 02-30325, 2003 WL 1524574, at \*3 (5th Cir. Mar. 12, 2003)* (per curiam) (highlighting that "the appellate
    mandate relates [only] to the record and issues then before the court, and does not purport to deal with possible later
    events" (quoting *Standard Oil, 429 U.S. at 18*)); *LSLJ P'ship v. Frito-Lay, Inc., 920 F.2d 476, 478 (7th Cir. 1990)* ("[A]
    district court may reopen a case which had been reviewed on appeal without leave from the court of appeals.").

4   DeWeerth involved a suit between two parties over a painting by French impressionist Claude Monet that was allegedly
    stolen from a castle in southern Germany during the waning days of the Second World War. See DeWeerth v. Baldinger,
    658 F. Supp. 688, 690 (S.D.N.Y. 1987). After a bench trial, the court awarded the painting to DeWeerth based, at least in
    part, on a finding that the applicable New York statute of limitations had not yet run. Id. at 693–96. The Second Circuit
    reversed, contending that the applicable New York statute of limitations had, in fact, run. See DeWeerth v. Baldinger,
    836 F.2d 103, 109–10 (2d Cir. 1987). In 1991, the New York Court of Appeals interpreted the state's statute of
    limitations in a manner consistent with the district court's original ruling. See Solomon R. Guggenheim Found. v.
    Lubell, 569 N.E.2d 426, 430–31 (N.Y. 1991). Noting that the state court's ruling was sufficient to constitute a "material
    change in circumstances," the district court granted the plaintiff's Rule 60 motion. DeWeerth v. Baldinger, 804 F. Supp.
    539, 541 (S.D.N.Y. 1992). In doing so, the district court noted that the Second Circuit had declined to alter its mandate
    in the wake of Guggenheim, which it suggested "may have been because the district court rather than the appellate court
    is the appropriate initial forum for seeking redress due to post-decisional changes in law or facts." Id. The Second
    Circuit reversed the ruling on the Rule 60(b) motion but noted that the district court did have jurisdiction to review the
    motion for relief. See DeWeerth 38 F.3d at 1270–71.

Rule 60(b) motion.

**12.** Accordingly, under *Standard Oil* the district court had jurisdiction to consider RSI's motion for relief under Rule 60. "[T]he appellate mandate relates to the record and issues then before the court, and does not purport to deal with possible later events." *Standard Oil, 429 U.S. at 18.* The district court determined that in re: *Hernandez, he* and his counsel had made numerous misrepresentations to both this court and the district court that were discovered after we ruled. Those misrepresentations were "possible later events," referenced in *Standard Oil,* sufficient to warrant action by the district court. Id. That the Rule 60(b) motion came on the heels of a reversal, rather than an affirmance, of the initial ruling is an insufficient basis for stripping a district court of its jurisdiction to hear Rule 60(b) motions without leave. Such a standard would be inconsistent with the rationale behind *Standard Oil*. See id. at 18–19.

**D. Discovery Material Deliberately Suppressed**

**13.** Rule 60(b)(3) permits a court to grant relief from a final judgment or order for "fraud . . . misrepresentation, or misconduct by an opposing party." To prevail on a Rule 60(b)(3) motion, a party must establish, by clear and convincing evidence, see *Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978),* "(1) that the adverse party engaged in fraud or other misconduct, and (2) that this misconduct prevented the moving party from fully and fairly presenting his case[5]."

**14.** In re: *Hernandez v. Results Staffing, Inc., 677 F. App'x 902 (5th Cir. 2017)* The district court made extensive findings that "[Hernandez], often through his attorney, engaged in fraud, misrepresentation, and misconduct in [his] presentations, verbally and in writing, to the court in pretrial matters, during the trial, and in his presentations to the Fifth Circuit in support

---

5  *Hesling v. CSX Transp., Inc., 396 F.3d 632, 641 (5th Cir. 2005)* (citing *Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, 62 F.3d 767, 772 (5th Cir. 1995)*). Ultimately, "[t]he purpose of [Rule 60(b)(3)] is to afford parties relief from judgments which are unfairly obtained, not those which may be factually incorrect." *Diaz v. Methodist Hosp., 46 F.3d 492, 496 (5th Cir. 1995).*

of his appeal from [the district] court's dismissal of his claims," sufficient to satisfy *Rozier's* first requirement. Following an exhaustive review of the record, the district court concluded that *Hernandez's* written submissions "were designed to lead the reader to think that [Hernandez's] sole reason for going to the emergency room on the morning of July 15, 2013, was to obtain care and treatment for a back injury he aggravated while serving a military tour of duty the preceding weekend." The written representations were supported by Hernandez's and his wife's in-court testimony, and at no point did Hernandez "disclose that his reason for going to the emergency room [on] the morning of July 15, 2013, was for treatment of a headache he developed that morning while at home."

15. In addition to the falsifications made to the district court, *Hernandez* made similar misrepresentations to this court and failed to tender, as part of RSI's request for production, all medical records related to his visit to the emergency room. The district court found that the "record was false in that it failed to disclose [Hernandez's] true reasons for his visit to the hospital emergency room," which affected both the trial and appellate proceedings.

16. Also in Re: *Hernandez* The district court found, by clear and convincing evidence, that the misconduct prevented RSI from having a full and fair opportunity to present its case. The court posited that had "the truth concerning [Hernandez's] reason for admission to the hospital . . . been disclosed during or before the trial, [RSI] would have been in a position to effectively argue," inter alia, "that [Hernandez's] failure to be at work [on] the morning of July 15, 2013, was not the result of any military-related injury, or aggravation of an injury, and that during the day of July 15, 2013, [Hernandez] was not convalescing from such an injury or aggravation."

17. The court also found that the misrepresentations to it, as well as the failure to disclose Hernandez's medical records, affected RSI's initial appeal to this court. Specifically,

the district court highlighted an exchange at this court's oral argument between one of the judges and counsel for RSI in which the judge asked counsel whether there was any evidence that rebutted Hernandez's assertion that an aggravation of a preexisting back injury was the basis for his visit to the emergency room. Ultimately, the district court's findings in its order are sufficient to satisfy Rozier's second requirement that the alleged misconduct must have prevented RSI from fully and fairly litigating its case. maintained that "where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation." Although *Anderson* is not binding on this court, its holding is instructive. Here, the misrepresentations by Hernandez, his wife, and his counsel, as well as the failure to disclose medical records responsive to RSI's discovery requests, presumably "inhibited the unearthing" of evidence adverse to Hernandez and "substantially interfered" with defense counsel's preparation.

18. In *Anderson v. Cryovac, Inc., 862 F.2d 910, 925 (1st Cir. 1988)*, the court maintained that "where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation."

19. In this sense, the grant of RSI's motion for relief from our prior judgment was not an abuse of discretion because it was not based on a "clearly erroneous assessment of the evidence." *Cooter & Gell v. Hartmarx, 496 U.S. 384, 405 (1990)*. The district court correctly applied our two-pronged test for Rule 60(b)(3) motions, finding, by clear and convincing evidence, that Hernandez engaged in fraud or other misconduct that prevented RSI from fully and fairly litigating its case. The Riley's contend that because the court failed to assess whether their rule 60(b)(3) motion met the two pronged test for rule 60(b)(3) motions the trial court

erred in failing to do so based on it's erroneous determination the court lacked jurisdiction to entertain the judgment.

**20.** In the instant case the Riley's aver that due to Defendant Wells Fargo Bank, N.A.'s suppression of the true fact that their evidence of the purchase and possession of the Riley's mortgage note was false and therefore the Riley's were prevented from making their case against Wells Fargo. The trial court's presumption of the facial validity of Wells Fargo's endorsed mortgage note prejudiced the Riley's case based on their false misrepresentations of ownership to the court and to the Riley's. The Riley's attached to their rule 60(b)(3) motion evidence that Defendant Wells Fargo filed a mortgage note with the department of veteran affairs in 2017 with a mortgage note where the endorsement the trial court in this instant case determined gave Wells Fargo standing to collect on the mortgage debt, and gave Wells Fargo standing to foreclose, had been voided by Wells Fargo. Appearing next to the voided endorsement is a new and different blank endorsement in favor of Wells Fargo. The Riley's alleged in their rule 60 motion that if the original endorsement that gave Wells Fargo standing to collect the mortgage and foreclose the home was void for any reason, then Wells Fargo's presumption of facial validity and possession of the note was lost under section 3 of the U.C.C

**21.** Under U.C.C. 3-203 cmt 2 the transferee must then prove ownership all the way back to the originator, see *Leavings v. Mills 175 S.W. 3d. 301 (Tex. Ct. App 2004)("a person not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which he acquired the note"),* see also *Jernigan,* 803 S.W.2d at 777; *Priesmeyer,* 917 S.W.2d at 939. The transferee does not enjoy the statutorily provided assumption of the right to enforce the instrument that accompanies a negotiated instrument, and so the transferee "must account for the possession of the unendorsed instrument by proving the transaction by which he acquired it" see U.C.C. 3-203 cmt 2.

**22.** Wells Fargo had maintained they had already purchased the note on August 03, 2009, the effective date of their first assignment of mortgage. However, even after the instant case, in Riley III (Riley v. Wells Fargo Bank, N.A., et. al. 4:15-cv-1415) which took place after the January 06, 2015 foreclosure, Wells Fargo maintained the same set of facts surrounding the August 03, 2009 purchase and possession of the Riley's mortgage note and foreclosed.

**23.** The Riley's contend that based on such similar conduct as was seen in the *Hernandez* case *infra*, Defendant Wells Fargo's prior judgment based on misrepresented facts and manufactured, fraudulent evidence, should not be permitted to stand unabated and the judgment of dismissal should be vacated. The Riley's contend it is a manifest injustice that Wells Fargo obtained the prior judgment of dismissal, collected on the Riley's mortgage note as the owner, foreclosed their home and collected over $125,000 in profit after reselling it and collecting on Mr. Riley's home loan guarantee with nothing more than a manufactured and fraudulently created and presented mortgage note(s). Wells Fargo used one fraudulently created mortgage note to obtain the judgment in this court, collect on the mortgage, and ultimately foreclosed the home. Then Wells Fargo used another (different) mortgage note to file claims against Mr. Riley's home loan guarantee that voided Wells Fargo's original note. The Riley's aver that in the interest of justice, public policy, and equity the court must reverse it's order denying relief under FRCP 60, enter an order granting the rule 60 motion and Plaintiff's motion to reopen the case.

**24.** "If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial would be a proper response." Id. (emphasis added). The *Diaz* plaintiff's failure to establish by clear and convincing evidence that the defendant's actions prevented her from fully and fairly litigating her case did not change our *Rozier* standard with

respect to Rule 60(b)(3) motions[6]. Thus, the Riley's contend they have met the *Rozier* test

because "(1) Defendant Wells Fargo engaged in fraud or other misconduct, and (2) that due to

the misconduct the court presumed the validity of the Defendants evidence that prevented the

Riley's from fully and fairly presenting their case.

**E. Appealability of Rule 60 Motion When Previous Case Not Appealed**

 **25.** The denial of a Rule 60(b) motion, "is appealable separately from the underlying

judgment." *Taylor v. Johnson, 257 F.3d 470, 474 (5th Cir. 2001)*. The district court had

jurisdiction to consider Plaintiff's Rule 60(b) motion, even though a district court generally

loses jurisdiction once a party files a notice of appeal. *Lewis v. Alexander, 987 F.2d 392, 394

(6th Cir.1993)*. As this Court held in *Lewis*, the district court retains jurisdiction when the

notice of appeal is untimely, because the appellate court lacks the jurisdiction to rule on the

merits of the appeal. *Id. At 395.*

 **26.** A timely filing of a notice of appeal is mandatory and jurisdictional. *Browder v.

Director, Dep't of Corrections of Ill., 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978)*;

*Myers v. Ace Hardware, Inc., 777 F.2d 1099, 1102 (6th Cir.1985)*. A notice of appeal in a civil

case "must be filed with the clerk of the district court within 30 days after the date of entry of

the judgment or order appealed from."   Fed. R.App. P. 4(a).

 **27.** The Fifth Circuit has thus held that the district court is utterly powerless to rectify an

attorney's abandonment that prevented the filing of an appeal, and in doing so has excused the

State from the jurisdictional requirement of appealing an order of which it indisputably had

knowledge, see 745 F.3d 174 ("Perez I") and 784 F.3d 276 ("Perez II") . The only appellate

judge to consider the merits of Perez's habeas claims concluded that he made a substantial

showing of at least one constitutional error at trial that should be heard on appeal. App. 65a-67a

---

6   Diaz, 46 F.3d at 496–97

(Dennis, J., dissenting). Certiorari is warranted to bring uniformity to the circuits on these exceptionally important questions and to ensure that *Perez*—just like the death row petitioner in *Maples v. Thomas, 132 S. Ct. 912, 924 (2012)* — is not prevented from having these meritorious claims heard simply because he was abandoned by counsel through no fault of his own.

28. In *Maples* this Court held that "a client cannot be charged with the acts or omissions of an attorney who has abandoned him" where that abandonment would otherwise prevent a timely appeal. Applying *Maples*, the district court found that Perez was abandoned by his prior counsel, who ceased work on his case without informing him of the denial of his federal habeas petition. The court therefore rectified that abandonment by vacating the denial under Fed. R. Civ. P. 60(b)(6) ("Rule 60(b)(6)") and entering a new order from which an appeal could be filed.

29. As in the instant case Plaintiff's attorney James Andersen abandoned them, ceased working on their case, and failed to file responses to three pending motions to dismiss, see memorandum and recommendation [Doc. No. 21, p 16, ¶ 1]. Furthermore he failed to inform the Plaintiff's of the status of their case. Their case was dismissed and no appeal was filed.

## Conclusion

The court should reverse its order denying Plaintiffs relief from the prior judgment. The court should grant the Plaintiffs motion to alter, amend, or modify the previous judgment of dismissal and enter an order granting the Plaintiffs motion to reopen the case. The court should find that it does have jurisdiction to hear the rule 60 motion and the motion to reopen the case based on the foregoing. The court should find that the rule 60 motion is timely filed under FRCP 60(b)(4), (b)(6), and (d)(3). The court should further find that there is sufficient evidence

to vacate the prior judgment of dismissal.

## Prayer

WHEREFORE, PREMSIES CONSIDERED, the Plaintiffs pray the court reverse it's March 25, 2019 order denying relief under FRCP 60, enter an order granting the motion to alter, amend, or modify the previous judgment of dismissal, and enter an order granting Plaintiff's motion to reopen the case. Plaintiff's pray the court to enter an order to make the Plaintiff's verified petition attached as exhibit A to Plaintiff's motion to alter, amend, or modify the previous judgment of dismissal as Plaintiff's verified live pleading. The Plaintiff;s pray the court enter an order for the Defendants to respond the the Plaintiff's verified petition and provide the documents requested in request for production Pursuant to Tex. Rule Civ. Procedure 194, the material described in Tex. Rule Civ. Procedure 194(a), (b), (c), (d), (e), (f), (g), (h), and (I). Plaintiffs pray for any further such relief they may be justly entitled.

<div style="margin-left: 50%;">

Respectfully Submitted,

/s/ George O. Riley
Pro Se
703-728-1842
griley0929@gmail.com
6326 Hedge Maple Court.,
Humble, Texas 77346
/s/ Trena L. Riley
Pro Se
480-665-7897
trelame@live.com
506 Geri Dr.,
Copperas Cove, Texas 76522

</div>

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing motion was served upon all the named Defendants counsel of record via the court's ecf system and/or regular email on March 27, 2019.

/s/ George O. Riley

**CERTIFICATE OF CONFERENCE**

I hereby certify that I attempted to discuss the preceding motion with Defendant's counsel Chris Dove on March 26, 2017 via email at cdove@lockelord.com. Having not heard from him I assume he is opposed to this motion.

/s/ George O. Riley

Exhibit 01

New Evidence and Affidavits in Support

VA Case No.: 62-62-6-1076238                           Loan No.: 7300001906

## NOTE

# NOTICE: THIS LOAN IS NOT ASSUMABLE WITHOUT THE APPROVAL OF THE DEPARTMENT OF VETERANS AFFAIRS OR ITS AUTHORIZED AGENT.

**MIN: 1001770-7300001906-9**
**MERS TELEPHONE: (888) 679-6377**

September 26, 2007                    HOUSTON                           TEXAS
[Date]                                 [City]                           [State]

### 13403 EXPLORER DRIVE, HOUSTON, TEXAS 77044
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 347,666.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **CRESTMARK MORTGAGE COMPANY, LTD.** I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

**(A)    Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **FIRST** day of each month beginning on **November 1, 2007.** I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2037, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **1177 WEST LOOP SOUTH #200,**
**HOUSTON, TEXAS 77027** or at a different place if required by the Note Holder.

**(B)    Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 2,197.49.

**4.    BORROWER'S RIGHT TO PREPAY**

The Borrower shall have the right to prepay at any time, without premium or fee, the entire indebtedness or any part thereof not less than the amount of one installment, or $100.00, whichever is less. Any Prepayment in full of the indebtedness shall be credited on the date received, and no interest may be charged thereafter. Any partial Prepayment made on other than an installment due date need not be credited until the next following installment due date or 30 days after such Prepayment, whichever is earlier.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
Amended for Texas and Veterans Affairs

                                    Page 1 of 3                                    Amended 6/00
                                                                                  Initials:

txvaamnt

6.    **BORROWER'S FAILURE TO PAY AS REQUIRED**
      (A)    **Late Charge for Overdue Payments**
      If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be four percent (4.00%) of my overdue payment. I will pay this late charge promptly but only once on each late payment.
      (B)    **Default**
      If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
      (C)    **Notice of Default**
      If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.
      (D)    **No Waiver By Note Holder**
      Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
      (E)    **Payment of Note Holder's Costs and Expenses**
      If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.
7.    **GIVING OF NOTICES**
      Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
      Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.
8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**
      If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.
9.    **WAIVERS**
      I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.
10.   **ALLONGE TO THIS NOTE**
      If an allonge providing for payment adjustments or for any other supplemental information is executed by the Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box]
            [ ] Graduated Payment Allonge        [ ] Other [Specify]        [ ] Other [Specify]
11.   **UNIFORM SECURED NOTE**
      This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

      Regulations (38 C.F.R. Part 36) issued under the Department of Veterans Affairs ("VA") Guaranteed Loan Authority (38 U.S.C. Chapter 37) and in effect on the date of loan closing shall govern the rights, duties and liabilities of the parties to this loan and any provisions of this Note which are inconsistent with such regulations are hereby amended and supplemented to conform thereto.

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200 1/01
Amended for Texas and Veterans Affairs

Page 2 of 3

Amended 6/00
Initials: 

THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
GEORGE O'RILEY                     -Borrower       TRENA LEEANN RILEY                  -Borrower

_____ (Seal)          _____ (Seal)
                                   -Borrower                                          -Borrower

*[Sign Original Only]*

Without recourse pay to the order of CORNERSTONE MORTGAGE COMPANY
_____          OA
CINDY ANNIS - MORTGAGE REPRESENTATIVE
CRESTMARK MORTGAGE COMPANY, LTD

Without recourse pay to the order of WELLS FARGO BANK, N.A.
_____
CINDY ANNIS - SR VICE PRESIDENT
CORNERSTONE MORTGAGE COMPANY          OA

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.          OA
By _____
William G. Aranda
Assistant Vice President

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.

BY _____
SAMUEL C. SHELLEY, SENIOR VICE PRESIDENT
0001

MULTISTATE FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01
Amended for Texas and Veterans Affairs
                                                                                            Amended 6/00



**DEPARTMENT OF VETERANS AFFAIRS**
**REGIONAL OFFICE**
**6900 ALMEDA ROAD**
**HOUSTON, TX 77030**

April 20, 2017

Mr. George Otto Carl Riley                    In Reply Refer To: 362/26
3200 Sikes Drive                              VA LIN 62-62-6-1076238
Kempner, Texas 76539

Dear Mr. Riley:

This letter is to provide you with additional details in regards to the return of custody that
occurred between the Department of Veterans Affairs (VA) and Wells Fargo for the
property located at 13403 Explorer Drive, Houston, TX.

After the termination of the property through foreclosure on January 6, 2015, Wells
Fargo transferred custody of the property to VA. The VA made an acquisition payment
and the property became a part of VA's property management portfolio; which is
currently managed through Vendor Resource Management (VRM). In return for custody
of the property, VA issued a payment to Wells Fargo in the amount of $297,675. This
payment was based on the current VA Net Value of the property as determined by the
liquidation appraisal. VA's acceptance of the property is based on the agreement that
Wells Fargo would transfer title to VA and provide all the necessary documents to show
clear and marketable title.

On January 8, 2016, Wells Fargo notified VA through an "Improper Transfer of Custody"
event that they intended to keep title of the property. This notification is necessary when
custody of the property is returned from VA to a prior servicer. After notification of the
event to VA, a Bill of Collection (BOC) to Wells Fargo for the full acquisition payment of
$297,675 plus $3,410 for fees and costs associated with the initial transfer of the
property. An additional bill of collection was issued to collect taxes VA paid on the initial
claim in the amount of $10,545.55 that no longer was reimbursable to Wells Fargo.
Along with collection of the funds, title was also returned to Wells Fargo to remove VA
from the chain of title.

In situations of return of custody and re-conveyance of title, VA's property management
contractor has the authority to execute documents to transfer title back to the previous
servicer. Per the county records, it shows title was returned to Wells Fargo by VA on
December 29, 2015, through a recorded Deed without Warranty.

I hope this information clarifies the questions you have regarding VA's part in transfer of title after the foreclosure sale occurred. If you have additional questions or concerns, please contact me at 1-888-232-2571, extension 1749.

Sincerely,

CARYN VAN VALKINGBURG
Loan Servicing Officer
Caryn.Vanvalkingburg@va.gov



**DEPARTMENT OF VETERANS AFFAIRS**
**REGIONAL OFFICE**
**6900 ALMEDA ROAD**
**HOUSTON, TX 77030**

April 3, 2017

Mr. George Otto Carl Riley                          In Reply Refer To: **362/26**
3200 Sikes Drive                                     VA LIN 62-62-6-1076238
Kempner, Texas 76539

Dear Mr. Riley:

This letter is in response to your Freedom of Information Act (FOIA) request dated
May 7, 2017, for a copy of deeds to the real property executed by the Department of
Veterans Affairs (VA), documentation and statements on any guaranty claims filed and
their effects on your VA home loan eligibility.

VA primarily conducts oversite of the guaranteed loan program and delegates
responsibility to the mortgage servicers to retain and maintain the loan origination and
foreclosure documents. Wells Fargo Home Mortgage has submitted several documents
to VA during the default period and at the time of claim payment for your loan (see
attachments).

At the time the property located at 13403 Explorer Drive, Houston, TX 77044, was a VA
guaranteed home loan, VA did not issue or execute any deeds. However, VA did
execute a Quit Claim Deed transferring the property to Wells Fargo in January 2016.
We do not have a copy of this document, but it can be obtained from Wells Fargo.
Please contact Wells Fargo for all other documents associated with the origination or
termination of this property.

VA paid an initial claim and an appeal claim under guaranty to Wells Fargo. The
payments issued by VA consisted of a maximum guaranty claim payment to Wells
Fargo in the amount of $94,192.33 on February 13, 2015, and an appeal claim in the
amount of $400.00 for an additional liquidation appraisal expense on March 11, 2015.
VA did not receive any refunds as a result of the foreclosure sale or management of the
property after the loan terminated.

After the foreclosure sale, Wells Fargo transferred custody of the property to VA and a
payment of $297,675.00 was issued, which represented the acquisition cost. This
payment was based on the net value of the property as determined by a VA liquidation
appraisal. On January 8, 2016, VA returned custody of the property to Wells Fargo and
a bill of collection was issued to recoup the acquisition cost. An additional bill of
collection was issued to collect taxes VA paid on the claim in the amount of $10,545.44
as Wells Fargo was no longer entitled to reimbursement of these funds. This bill of
collection reduced the amount of the loss to VA by the claim payment.

Page 2:
Riley, George Otto Carl

After the claims were paid and bill of collections issued, there was a loss to VA of
$84,046.89.  VA will not pursue you for collection of the claim payment.  However, to
restore your VA loan entitlement, these funds will have to be repaid in full.

Attached are copies of all documents VA has access to regarding your loan termination
and claim payments.  If you have additional questions or need further assistance,
please call Caryn Van Valkingburg, VA Loan Servicing Officer, toll free at 888-232-
2571, extension 1749.  Our office hours are Monday through Friday from 7:30 a.m. to
4:00 p.m.

Sincerely,

JOHN HEIL
Loan Guaranty Officer

Enclosures:
Copy of Basic Claim
Copy of Appeal Claim
Payment History indicating payments to Wells Fargo and bill of collections issued by VA
Loan Ledger History provided by Wells Fargo
Copy of original Note

# EXHIBIT # 4

## AFFIDAVIT OF GEORGE O. RILEY
## 3 PAGES

# §AFFIDAVIT§

THE STATE OF TEXAS

COUNTY OF _____

BEFORE ME, the undersigned authority personally appeared before me:

George O. Riley who swore or affirmed to tell truth as follows:

I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie in this statement I may be held criminally responsible. This statement is true.

My name is George O. Riley.  I make the following statements regarding the letters and accompanying copy of the mortgage note attached thereto that I received from John Heil, Loan Guaranty Officer for The Department of Veteran Affairs, and Caryn Van Valkingburg 6900 Almeda Road, Houston, Texas 77030. The letter from John Heil was received on approximately April 06, 2017. The letter from Caryn Van Valkingburg was received on approximately April 23, 2017.

The letter dated April 03, 2017  is from John Heil attesting to the facts surrounding the claims for payment of George O. Riley's Veteran Home Loan Guaranty filed with The Department of Veteran Affairs filed by Wells Fargo Bank, N.A. Beginning on February 15, 2015 The Department of Veteran Affairs issued a payment to Wells Fargo Bank, N.A., in the amount of $94,192.33, and an appeal claim for $400.00 for an "liquidation appraisal expense" on March 11, 2015.

The mortgage note attached to John Heil's letter filed by Wells Fargo Bank, N.A., is different than the mortgage note attached to Wells Fargo's written response to The Riley's Consumer Financial Protection Bureau Complaint of the same date. The mortgage note attached to Wells Fargo's written response to The Riley's Consumer Financial Protection Bureau Complaint is unendorsed though it was sent to The Riley's the same day Wells Fargo filed their claim with The Department of Veteran Affairs.

After the foreclosure sale of Mr. Riley's real property on January 06, 2015 Wells Fargo Bank, N.A., transferred custody of the property to The Department of Veteran Affairs and a payment of $297,675.00 was issued to Wells Fargo Bank, N.A., from The Department of Veteran Affairs. On January 08, 2016, The Department of Veteran Affairs returned custody of the property back to Wells Fargo Bank, N.A., and a bill of collection was issued to Wells Fargo Bank, N.A., to recoup the acquisition cost of $297,675.00 originally paid by The Department of Veteran Affairs. An additional bill of collection in the amount of $10,545.44 was issued to recoup the claims from Wells Fargo Bank, N.A., for their claim of back taxes paid "as Wells Fargo was no longer entitled to

AFFIDAVIT OF GEORGE O. RILEY                                                    1 of 3

reimbursement of those funds". That bill of collection reduced the amount of loss to The Department of Veteran Affairs by the claim payment.

After the claims were paid and bill of collections issued, there was a loss to The Department of Veteran Affairs of $84,046.89. In order for Mr. Riley's loan entitlement to be restored the loss of $84,046.89 must be repaid by Mr. Riley to restore his entitlement to his veteran home loan guaranty.

After several emails and phone conversations between Mr. Riley and Caryn Van Valikingburg of The Department of Veteran Affairs, Ms. Van Valikingburg sent Mr. Riley a followup letter on April 20, 2017 explaining in more detail the circumstances that ultimately resulted in the denial of Wells Fargo Bank, N.A.'s claims against Mr. Riley's home loan guarantee.

The simple explanation that resulted in the denial of Wells Fargo Bank, N.A.'s claims against Mr. Riley's home loan guarantee was that Wells Fargo could not provide "clear and marketable title" to The Department of Veteran Affairs in relation to Mr. Riley's real property. Additionally, the copy of the mortgage note used by Wells Fargo in filing the claims with The Department of Veteran Affairs against Mr. Riley's loan guarantee contained a different endorsement page as well as a previous fourth page to the note not before seen that contains ink bleed through of the third page.

The third page of the mortgage note attached to Wells Fargo's claims to The Department of Veteran Affairs has a previous endorsement in Wells Fargo's favor now crossed out, and a new endorsement to Wells Fargo containing the name of a different person whose signature is attesting to endorse it appear beside the original endorsement.

The differences between the note attached to John Heil's letter dated April 03, 2017 and the previous mortgage notes used by Wells Fargo to establish a right to title against Mr. Riley's real property raise several genuine issues of material fact. These include:

1. Why is the previous endorsement to Wells Fargo crossed out?

2. Why is their a new and different endorsement on the note?

3. Why is there a fourth page?

4. When did the endorsement change?

5. Why did the endorsement change?

AFFIDAVIT OF GEORGE O. RILEY                                                    2 of 3

# §AFFIDAVIT§

THE STATE OF TEXAS
COUNTY OF ___CORYELL___

BEFORE ME, the undersigned authority personally appeared before me:

<u>Trena L. Riley</u> who swore or affirmed to tell truth as follows:

I am of sound mind and capable of making this sworn statement. I have personal knowledge of the facts written in this statement. I understand that if I lie in this statement I may be held criminally responsible. This statement is true.

My name is Trena L. Riley. I make the following statements regarding the letters and accompanying copy of the mortgage note attached thereto that we received from John Heil, Loan Guaranty Officer for The Department of Veteran Affairs, and Caryn Van Valkingburg 6900 Almeda Road, Houston, Texas 77030. The letter from John Heil was received on approximately April 06, 2017. The letter from Caryn Van Valkingburg was received on approximately April 23, 2017.

I have read the letters we received from both John Heil and Caryn Van Valkingburg of The Department of Veteran Affairs. I have reviewed the mortgage note Mr. Heil attached to his letter dated April 03, 2017 and I made the following observations regarding the mortgage note. The mortgage note attached to Mr. Heil's letter is different than the mortgage note Wells Fargo sent us on the same date in response to our Consumer Financial Protection Bureau Complaint. The mortgage note attached to Mr. Heil's letter has a fourth page to it. The mortgage note that Wells Fargo sent to us on the same day they filed a claim with The V.A., is not endorsed although the note Wells Fargo filed with the V.A., is endorsed. The new note filed by Wells Fargo has a previous endorsement to Wells Fargo crossed out. A new endorsement to Wells Fargo is stamped next to the old one. The new endorsement is signed by a different person than before.

Comparing the new mortgage note filed by Wells Fargo Bank, N.A., with The Department of Veteran Affairs with the previous endorsed notes filed by Wells Fargo in our previous Chapter 13 Bankruptcies the endorsements are not only different but the new note has a fourth page unlike the previous versions of the mortgage notes. There are changes to page one of the notes attached to Wells Fargo's claims in our Chapter 13 bankruptcies, and the note filed by Wells Fargo with The Department of Veteran Affairs. It appears the notes have been altered in photoshop.

To support my observation that the mortgage notes in question have been altered in photoshop I state the following observations:

AFFIDAVIT OF TRENA L. RILEY                                                    1 of 2

The copy of the mortgage note given to us on 09/26/2007 contain a VA case number, Loan number, and MERS MIN number. The first mortgage note attached to Wells Fargo Bank, N.A.'s secured claim in our first Chapter 13 bankruptcy 09-31639 does not contain our VA case number, our mortgage loan number, or MERS MIN number, but the third page does contain an endorsement to Wells Fargo. The alignment of the documents do not line up. If they were copies the alignments should match up. Second, the copy of Wells Fargo's note attached to their secured claim in our third Chapter 13 bankruptcy 09-36148 not only has redaction lines on it, but is still missing the VA case number, Loan number, and MERS MIN number, but contains the same endorsements on page three as before. The copy of the mortgage note sent to us by Wells Fargo February 15, 2015 is stamped a "true and correct copy of the original" and contains the missing VA Case number, Loan number and MERS MIN number, but they don't line up with the original and is not endorsed. Further, the note sent to us on February 15, 2015 by Wells Fargo marked a true and correct copy of the original does not line up when overlayed with the original.

The new mortgage note attached to Wells Fargo's claim against my husband's veteran home loan guarantee has different endorsements, contains a fourth page, and is not marked a "true and correct copy of the original" as they have previously attested.


The preceding statements were made by me.

State of Texas County of _Coryell_          SWORN to and SUBSCRIBED before me, the

undersigned authority, on the 26th day of JUNE, 2017 by

_Trena Riley_

Trena L. Riley


_____          Notary Public, State of Texas [Notary's
signature.]

FOAGA M. SOKIMI
MY COMMISSION EXPIRES
September 26, 2019

[Notary's seal must be included.]


AFFIDAVIT OF TRENA L. RILEY                                    2 of 2